FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

2015 DEC 17 PM 3:16

CLERK'S OFFICE
AT BALTIMORE

BY_____

**U.S. Department of Justice**

*United States Attorney*

*District of Maryland*

| | | |
|---|---|---|
| Paul E. Budlow<br>Assistant United States Attorney<br>Paul.Budlow@usdoj.gov | Suite 400<br>36 S. Charles Street<br>Baltimore, MD 21201-3119 | DIRECT: 410-209-4917<br>MAIN: 410-209-4800<br>FAX: 410-962-3091 |

November 17, 2015

David R. Solomon
201 N. Charles Street, Suite 1717
Baltimore, Maryland 21201

    Re:    United States v. Aleksey Sosonko,
            Criminal #: JFM-15-0261

Dear Mr. Solomon:

      This letter, together with the Sealed Supplement, confirms the plea agreement which has been offered to the Defendant by the United States Attorney's Office for the District of Maryland ("this Office"). If the Defendant accepts this offer, please have him execute it in the spaces provided below. If this offer has not been accepted by Friday, November 20, 2015, at 5:00 p.m., it will be deemed withdrawn. The terms of the agreement are as follows:

## Offense of Conviction

      1.    The Defendant agrees to plead guilty to the following counts of the Superseding Indictment now pending against him: Count One, which charges him with Conspiracy to Affect Commerce by Robbery in violation of 18 U.S.C. § 1951(a), Count Four, which charges him with Kidnapping in violation of 18 U.S.C. § 1201(a), and Count Six, which charges him with Brandishing a Firearm in Relation to a Crime of Violence, in violation of 18 U.S.C. § 924(c). The Defendant admits that he is, in fact, guilty of those offenses and will so advise the Court.

## Elements of the Offense

Count One (Conspiracy to Affect Commerce by Robbery):

      2.    The elements of Count One to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows:

That from approximately November 2012 and continuing through to on or about to February 2, 2013, in the District of Maryland, the Defendant knowingly conspired and agreed with others to obstruct, delay or affect commerce, or the movement of any article or commodity in commerce, by robbery.

1

The elements of Robbery Affecting Interstate Commerce in violation of 18 U.S.C. §1951(a) that the government would have to prove if the case went to trial are:

    a.    That on January 16, 2013, in the District of Maryland, a person knowingly obtained or took the personal property of another, or from the presence of another;

    b.    That a person took this property against the victim's will, by actual or threatened force, violence, or fear of injury, whether immediate or in the future; and

    c.    That, as a result of the defendant's actions or those of others with whom he conspired, interstate commerce, or an item moving in interstate commerce, was delayed, obstructed, or affected in any way or degree.

Count Four (Kidnapping):

3.    The elements of Count Four to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows:

    a.    That on January 16, 2013, the defendant seized or confined or inveigled or decoyed or kidnapped or abducted or carried away the victim;

    b.    That the defendant held the victim for ransom or reward or for any other reason;

    c.    That the victim was transported in interstate or foreign commerce or the defendant traveled in interstate or foreign commerce or used the mail or any means, facility, or instrumentality of interstate or foreign commerce in committing or in furtherance of the commission of the offense; and

    d.    That the defendant acted unlawfully, knowingly and willfully.

Count Six - Brandishing a Firearm in Relation to a Crime of Violence:

4.    The elements of Count Six to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows:

    a.    That the Defendant possessed or brandished a firearm on or about January 16, 2013, in the District of Maryland, and

    b.    That the Defendant did so during and in relation to a crime of violence, to wit: Conspiracy to Affect Commerce by Robbery a robbery (Count One) and Kidnapping (Count Four).

**Penalties**

5.    The maximum sentence provided by statute for the offense to which the Defendant is

pleading guilty is as follows:

   a. Count One: 20 years imprisonment, a $250,000 fine, and up to three (3) years supervised release;

   b. Count Four: Life imprisonment, a $250,000 fine, and up to five (5) years supervised release; and

   c. Count Six: Life imprisonment, followed by a term of supervised release of five (5) years, and a fine of $250,000. Count Six also carries a mandatory minimum term of imprisonment for seven years, consecutive to any other sentence.

  6. In addition, the Defendant must pay $300 as a special assessment pursuant to 18 U.S.C. § 3013, which will be due and should be paid at or before the time of sentencing. This Court may also order him to make restitution pursuant to 18 U.S.C. §§ 3663, 3663A, and 3664. If a fine or restitution is imposed, it shall be payable immediately, unless, pursuant to 18 U.S.C. § 3572(d), the Court orders otherwise. The Defendant understands that if he serves a term of imprisonment, is released on supervised release, and then violates the conditions of his supervised release, his supervised release could be revoked - even on the last day of the term - and the Defendant could be returned to custody to serve another period of incarceration and a new term of supervised release. The Defendant understands that the Bureau of Prisons has sole discretion in designating the institution at which the Defendant will serve any term of imprisonment imposed.

## Waiver of Rights

  7. The Defendant understands that by entering into this agreement, he surrenders certain rights as outlined below:

   a. If the Defendant had persisted in his plea of not guilty, he would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

   b. If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

   c. If the Defendant went to trial, the government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the government's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses in his defense, however, he would have the subpoena power of the Court to compel the witnesses to attend.

3

   d. The Defendant would have the right to testify in his own defense if he so chose, and he would have the right to refuse to testify. If he chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from his decision not to testify.

   e. If the Defendant were found guilty after a trial, he would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges against him. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

   f. By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence. By pleading guilty, the Defendant understands that he may have to answer the Court's questions both about the rights he is giving up and about the facts of his case. Any statements the Defendant makes during such a hearing would not be admissible against him during a trial except in a criminal proceeding for perjury or false statement.

   g. If the Court accepts the Defendant's plea of guilty, there will be no further trial or proceeding of any kind, and the Court will find him guilty.

   h. By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status. The Defendant recognizes that if he is not a citizen of the United States, pleading guilty may have consequences with respect to his immigration status. Under federal law, conviction for a broad range of crimes can lead to adverse immigration consequences, including automatic removal from the United States. Removal and other immigration consequences are the subject of a separate proceeding, however, and the Defendant understands that no one, including his attorney or the Court, can predict with certainty the effect of a conviction on immigration status. Defendant nevertheless affirms that he wants to plead guilty regardless of any potential immigration consequences.

## Advisory Sentencing Guidelines Apply

 8. The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. §§ 3551-3742 (excepting 18 U.S.C. §§ 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998. The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

## Factual and Advisory Guidelines Stipulation

 9. This Office and the Defendant understand, agree and stipulate to the Statement of Facts set forth in Attachment A hereto which this Office would prove beyond a reasonable doubt, and to the following applicable sentencing guidelines factors:

4

Count One: Conspiracy to Affect Commerce by Robbery:

  a. Pursuant to U.S.S.G. § 2B3.1, the base offense level for Conspiracy to Affect Commerce by Robbery is twenty (20).

  b. Pursuant to U.S.S.G. § 2B3.1(b)(4)(A), there is a four (4) level increase because a person was abducted to facilitate the commission of the offense. (Subtotal: 24).

  c. Pursuant to U.S.S.G. § 2B3.1(b)(5), there is a two (2) level increase because the offense involved carjacking. (Subtotal: 26).

  d. Pursuant to U.S.S.G. § 2B3.1(b)(7)(D), there is a three (3) level increase because the loss exceeded $500,000. (Subtotal: 29).

  e. Pursuant to U.S.S.G. § 3C1.1, there is a two (2) level increase because the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and the obstructive conduct related to the defendant's offense of conviction and any relevant conduct or closely related offense. (Subtotal: 31).

Count Four: Kidnapping (Groups with Count One):

  f. Pursuant to U.S.S.G. § 2A4.1, the base offense level for Kidnapping is thirty-two (32).

  g. Pursuant to U.S.S.G. § 3C1.1, there is a two (2) level increase because the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and the obstructive conduct related to the defendant's offense of conviction and any relevant conduct or closely related offense. (Subtotal: 34).

Relevant Conduct – July 22, 2012 Home Invasion Robbery:

  h. Pursuant to U.S.S.G. § 2B3.1, the base offense level for Robbery is twenty (20).

  i. Pursuant to U.S.S.G. § 2B3.1(b)(2)(B), there is a six (6) level increase because a firearm was used. (Subtotal: 26).

  j. Pursuant to U.S.S.G. § 2B3.1(b)(3)(A), there is a two (2) level increase because a victim sustained bodily injury. (Subtotal: 28).

  k. Pursuant to U.S.S.G. § 2B3.1(b)(4)(B), there is a two (2) level increase because a person was restrained to facilitate the commission of the offense. (Subtotal: 30).

   l. Pursuant to U.S.S.G. § 2B3.1(b)(6), there is a one (1) level increase because firearms were taken. (Subtotal: 31).

   m. Pursuant to U.S.S.G. § 2B3.1(b)(7)(A), and in anticipation of forthcoming changes to the U.S.S.G., there is no increase for loss. (Subtotal: 31).

Grouping:

   n. Group 1: Conspiracy to Affect Commerce by Robbery (Count One) and Kidnapping (Count Four) involved the same victim and the same act or transaction and therefore group. The offense level for this group is 34.

   o. Group 2 (Relevant Conduct – July 22, 2012 Home Invasion Robbery): The offense level for this group is 31.

   p. Because the offense level for the group with the highest offense level is 34, and because the offense level for Group 2 is within four levels, there are two units and the offense level is increased by two (2) levels pursuant to U.S.S.G. § 3D1.4. (Subtotal: 36).

Count Six - Brandishing a Firearm in Relation to a Crime of Violence:

   q. Under U.S.S.G. § 2K2.4(b) and 18 U.S.C. § 924(c)(ii), the guideline sentence is seven (7) years, which is consecutive to the sentences imposed under Count One and Count Four.

  10. This Office does not oppose a two-level reduction in the Defendant's adjusted offense level, based upon the Defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for his criminal conduct. This Office agrees to make a motion pursuant to U.S.S.G. § 3E1.1(b) for an additional 1-level decrease in recognition of your client's acceptance of personal responsibility for his conduct. This Office may oppose any adjustment for acceptance of responsibility if the Defendant (a) fails to admit each and every item in the factual stipulation; (b) denies involvement in the offense; (c) gives conflicting statements about his involvement in the offense; (d) is untruthful with the Court, this Office, or the United States Probation Office; (e) obstructs or attempts to obstruct justice prior to sentencing; (f) engages in any criminal conduct between the date of this agreement and the date of sentencing; or (g) attempts to withdraw his plea of guilty.

  11. Thus, the adjusted offense level is 33.

  12. The Defendant understands that there is no agreement as to his criminal history or criminal history category, and that his criminal history could alter his offense level if he is a career offender or if the instant offense was a part of a pattern of criminal conduct from which he derived a substantial portion of his income.

  13. This Office and the Defendant agree that with respect to the calculation of the advisory guidelines range, no other offense characteristics, sentencing guidelines factors, potential

departures or adjustments set forth in the United States Sentencing Guidelines will be raised or are in dispute.

### Obligations of the United States Attorney's Office

14. At the time of sentencing, this Office will recommend a reasonable sentence taking into consideration the adjusted U.S.S.G. level and the sentencing factors outlined at 18 U.S.C. § 3553(a). At the time of sentencing, this Office will move to dismiss any open counts against the Defendant.

15. The State's Attorney's Office for Baltimore County represents to this Office that it will not pursue further criminal charges arising out of the events described in the factual stipulation attached hereto provided that the Defendant is sentenced pursuant to this plea agreement.

16. The parties reserve the right to bring to the Court's attention at the time of sentencing, and the Court will be entitled to consider, all relevant information concerning the Defendant's background, character and conduct.

### Restitution

17. The Defendant agrees to the entry of a Restitution Order for the full amount of the victims' losses as set forth in Attachment A. The Defendant agrees that, pursuant to 18 U.S.C. §§ 3663 and 3663A and §§ 3563(b)(2) and 3583(d), the Court may order restitution of the full amount of the actual, total loss caused by the offense conduct set forth in the factual stipulation. The Defendant further agrees that he will fully disclose to the probation officer and to the Court, subject to the penalty of perjury, all information, including but not limited to copies of all relevant bank and financial records, regarding the current location and prior disposition of all funds obtained as a result of the criminal conduct set forth in the factual stipulation. The Defendant further agrees to take all reasonable steps to retrieve or repatriate any such funds and to make them available for restitution. If the Defendant does not fulfill this provision, it will be considered a material breach of this plea agreement, and this Office may seek to be relieved of its obligations under this agreement.

### Collection of Financial Obligations

18. The Defendant expressly authorizes the U.S. Attorney's Office to obtain a credit report in order to evaluate the Defendant's ability to satisfy any financial obligation imposed by the Court.

19. In order to facilitate the collection of financial obligations to be imposed in connection with this prosecution, the Defendant agrees to disclose fully all assets in which the Defendant has any interest or over which the Defendant exercises control, directly or indirectly, including those held by a spouse, nominee or other third party.

20. The Defendant will promptly submit a completed financial statement to the United States Attorney's Office, in a form this Office prescribes and as it directs. The Defendant promises that the financial statement and disclosures will be complete, accurate and truthful, and understands

that any willful falsehood on the financial statement will be a separate crime and may be punished under 18 U.S.C. § 1001 by an additional five years' incarceration and fine.

## Waiver of Appeal

21. In exchange for the concessions made by this Office and the Defendant in this plea agreement, this Office and the Defendant waive their rights to appeal as follows:

    a. The Defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or otherwise, to appeal the Defendant's conviction.

    b. The Defendant and this Office knowingly waive all right, pursuant to 18 U.S.C. § 3742 or otherwise, to appeal whatever sentence in imposed (including the right to appeal any issues that relate to the establishment of the advisory guidelines range, the determination of the defendant's criminal history, the weighing of the sentencing factors, and the decision whether to impose and the calculation of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised release).

    c. Nothing in this agreement shall be construed to prevent the Defendant or this Office from invoking the provisions of Federal Rule of Criminal Procedure 35(a), or from appealing from any decision thereunder, should a sentence be imposed that resulted from arithmetical, technical, or other clear error.

    d. The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above captioned matter and agrees not to file any request for documents from this Office or any investigating agency.

    e. The Defendant further waives any and all motions, defenses, probable cause determinations, objections which defendant could assert to the superseding indictment or to the Court's entry of judgment against the Defendant, and any imposition of sentence upon the Defendant consistent with this agreement. If Defendant files a notice of appeal, notwithstanding this agreement, Defendant agrees that this case shall be remanded to the district court to determine whether Defendant is in breach of this agreement and, if so, to permit the United States to withdraw from the plea agreement.

## Obstruction or Other Violations of Law

22. The Defendant agrees that he will not commit any offense in violation of federal, state or local law between the date of this agreement and his sentencing in this case. In the event that the Defendant (i) engages in conduct after the date of this agreement which would justify a finding of obstruction of justice under U.S.S.G. § 3C1.1, or (ii) fails to accept personal responsibility for his conduct by failing to acknowledge his guilt to the probation officer who prepares the Presentence Report, (iii) files a motion to withdraw his guilty plea, or (iv) commits any offense in violation of federal, state or local law, then this Office will be relieved of its obligations to the Defendant as reflected in this agreement. Specifically, this Office will be free to argue sentencing guidelines factors other than those stipulated in this agreement, and it will also be free to

8

make sentencing recommendations other than those set out in this agreement. As with any alleged breach of this agreement, this Office will bear the burden of convincing the Court of the Defendant's obstructive or unlawful behavior and/or failure to acknowledge personal responsibility by a preponderance of the evidence. The Defendant acknowledges that he may not withdraw his guilty plea because this Office is relieved of its obligations under the agreement pursuant to this paragraph.

### Court Not a Party

23.     The Defendant expressly understands that the Court is not a party to this agreement. In the federal system, the sentence to be imposed is within the sole discretion of the Court. In particular, the Defendant understands that neither the United States Probation Office nor the Court is bound by the stipulation set forth above, and that the Court will, with the aid of the Presentence Report, determine the facts relevant to sentencing. The Defendant understands that the Court cannot rely exclusively upon the stipulation in ascertaining the factors relevant to the determination of sentence. Rather, in determining the factual basis for the sentence, the Court will consider the stipulation, together with the results of the presentence investigation, and any other relevant information.

### Entire Agreement

24.     This letter supersedes any prior understandings, promises, or conditions between this Office and the Defendant and, together with the Sealed Supplement, constitutes the complete plea agreement in this case. The Defendant acknowledges that there are no other agreements, promises, undertakings or understandings between the Defendant and this Office other than those set forth in this letter and the Sealed Supplement and none will be entered into unless in writing and signed by all parties.

If the Defendant fully accepts each and every term and condition of this agreement, please sign and have the Defendant sign the original and return it to me promptly.

Very truly yours,

Rod J. Rosenstein
United States Attorney

By: _____
Paul E. Budlow
Aaron S.J. Zelinsky
Assistant United States Attorneys

I have read this agreement, including the Sealed Supplement, and carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney, and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

12/1/15
Date

Aleksey Sosonko

I am Aleksey Sosonko's attorney. I have carefully reviewed every part of this agreement, including the Sealed Supplement, with him. He advises me that he understands and accepts its terms. To my knowledge, his decision to enter into this agreement is an informed and voluntary one.

12/1/15
Date

David R. Solomon, Esq.

## Attachment A

*The undersigned parties hereby stipulate and agree that the following facts are true and accurate, and that if this matter had gone to trial, the government would have proven the following facts beyond a reasonable doubt. The undersigned parties also stipulate and agree that the following facts do not encompass all of the evidence that would have been presented had this matter gone to trial.*

Aleksey Sosonko ("Sosonko"), age 35, is a resident of Owings Mills, Maryland. As detailed below, Sosonko participated in the planning and commission of the armed robbery of Antony Jewelers. In the course of that conspiracy, Sosonko participated in an armed home invasion robbery designed to obtain firearms, which were subsequently used in the robbery of the jewelry store.

Home Invasion Robbery:

Z.R.'s home is located on Nicodemus Road in a rural area of Reisterstown, Maryland. During the summer of 2012, Grigory Zilberman ("Zilberman") visited Z.R.'s home as an invited guest on a number of occasions and was familiar with the layout of the home. He was also aware that the residents of the home owned numerous firearms for sporting purposes. Zilberman had handled and fired some of the weapons.

In the days leading up to July 22, 2012, Sosonko, Stanislav (Steven) Yelizarov ("S. Yelizarov"), Marat Yelizarov ("M. Yelizarov"), Zilberman, and others conducted surveillance at the residence in preparation for the robbery.

On July 22, 2012, at approximately 2:30 a.m., Sosonko, S. Yelizarov, M. Yelizarov, Zilberman, and an unnamed co-conspirator travelled in a single vehicle to Z.R.'s residence on Nicodemus Road for the purpose of committing an armed robbery and stealing firearms. The unnamed co-conspirator was the driver. S. Yelizarov, M. Yelizarov, Sosonko and Zilberman, dressed in all black, wearing ski masks and latex gloves, entered the home through the unlocked garage door. S. Yelizarov was armed with a handgun when they entered the residence. Shortly after entering the residence, M. Yelizarov, Sosonko, and Zilberman grabbed long guns and carried them throughout the home.

R.D. was home asleep at the time of the robbery. As the four men entered his bedroom, they pointed guns at him and shined flashlights in his eyes while ordering him not to resist. When R.D. resisted, one of the conspirators struck R.D. repeatedly with the handgun while another jumped on top of R.D. and began to tie him with a belt and a cord. R.D. was told that they would "put one in him" if he continued to resist. R.D. was forced to lay face down while bound. The four men ransacked the home looking for firearms and other valuables. The four men stayed in the home for approximately one hour. R.D. was able to free himself from his bindings and call 911 approximately 15 minutes after the four men left his home. When emergency personnel arrived they observed R.D. bleeding from the mouth and the back of the head. R.D. was taken by ambulance to Sinai Hospital. Items stolen from the house included 10 long guns (rifles and shotguns), a crossbow, a laptop computer, jewelry and a marijuana smoking device. Numerous electronic devices including computers and televisions were destroyed during the robbery. The value of the items stolen was approximately $10,000.

1

Antony Jewelers – Kidnapping, Carjacking, Robbery:

Antony Jewelers, located at 11238 Reisterstown Road, Owings Mills, Maryland, was a retail business that sold, repaired and designed high-end jewelry and watches that were obtained from suppliers, retailers and manufacturers located outside the State of Maryland and thus affected interstate commerce.

In the fall of 2012, S. Yelizarov and Zilberman devised a plan to commit an armed robbery of Antony Jewelers, a business known by the conspirators to be owned and operated by members of the Russian community of Northwest Baltimore. One of the objects of the plan was to sell the stolen property for cash and split the proceeds. S. Yelizarov recruited others to participate, including Sosonko, Igor Yasinov ("Yasinov"), Peter Magnis ("Magnis"), M. Yelizarov, Sorhib Omonov ("Omonov") and others. Together, they conspired to commit the robbery, kidnapping, and carjacking described below. The plan was discussed at length on numerous occasions, often at S. Yelizarov's residence.

As part of the conspiracy, the co-conspirators gathered intelligence including S. Yelizarov instructing mutual friends of an employee of Antony Jewelers to learn details about Antony Jewelers for use during the conspiracy. Zilberman exploited the friendship between himself and the employee of Antony Jewelers for the purpose of learning information about Antony Jewelers, including the habits and routine of the employee prior to the armed robbery, kidnapping and carjacking. The intelligence gathering also included conducting surveillance and the use of a global positioning ("GPS") device that was attached to the car of the employee prior to the robbery in order to learn the employee's travel routine and habits. As part of the planning, S. Yelizarov obtained a law enforcement-type light bar and a loudspeaker to impersonate a police officer to stop the employee's vehicle.

On January 15, 2013, Zilberman enticed the employee of Antony Jewelers to visit his home in order to alert the other co-conspirators of the employee's whereabouts. Zilberman notified conspirators when the employee arrived and left his residence. While the employee was at Zilberman's residence, S. Yelizarov, Yasinov, Sosonko, M. Yelizarov, Magnis, Omonov, and an unnamed coconspirator met at S. Yelizarov's residence to prepare for the crime. The preparation included handling the firearms, and donning masks and gloves. M. Yelizarov and S. Omonov drove in a single rented vehicle to Zilberman's residence in order to alert the other co-conspirators of the employee's departure and to follow the employee.

In the early morning hours of January 16, 2013, M. Yelizarov notified the other co-conspirators that the employee had left Zilberman's residence. S. Yelizarov then drove Sosonko, Yasinov, and Magnis, in a second rented vehicle to intercept the employee on his drive home. They took the following items with them: guns, masks, gloves, the law enforcement-type light bar, the loudspeaker, phones, zip ties, and a bag to cover the victim's head. Near the employee's home, the law enforcement light bar was activated in order to stop the employee's car near his home in Owings Mills, Maryland. The conspirators used the loudspeaker to command that the employee exit his car.

S. Yelizarov, Sosonko, Yasinov, and Magnis were each armed with firearms and brandished the firearms to remove the employee from his car. The bag was placed over the victim's head, and he was forcibly bound, and placed into the trunk of his own car. The employee was then driven to a predetermined remote location. At the predetermined location, S. Yelizarov, Sosonko, Yasinov, and Magnis continued to brandish firearms at the employee, who

was told that the co-conspirators knew his family's place of residence, and that if he did not comply with their demands or if he reported the incident to the police they would kill his family. The armed men disguised their voices while making demands of the employee. The employee complied.

At approximately 3:52 a.m., S. Yelizarov and Sosonko drove in the employee's car from the remote location to Antony Jewelers, while Yasinov and Magnis stayed with the employee and held him bound and blindfolded at gunpoint. During the incident, Yasinov and Magnis pointed a sawed-off shotgun to the head of the employee. M. Yelizarov and S. Omonov were stationed near Antony Jewelers and acted as "look-outs," in order to report possible law enforcement presence.

At approximately 4:19 a.m., S. Yelizarov and Sosonko entered Antony Jewelers and stole jewelry, stones, and watches valued at over $500,000. When S. Yelizarov and Sosonko were unable to get into the locked safe, S. Yelizarov used a mobile phone and called back to where the employee was being held and threatened additional harm if the employee did not provide the combination to the safe. When the employee was unable to provide the combination, S. Yelizarov and Sosonko drove back to the remote location, where the employee was placed back into the trunk of his car and driven to another location, where he was left. The employee was able to kick his way out of the trunk through the back seat of his car.

Throughout the incident, the conspirators, including Sosonko, communicated with each other in furtherance of the offenses using mobile phones. The mobile phones and the GPS device are instrumentalities of interstate or foreign commerce.

On January 18, 2013, S. Yelizarov sold a portion of the stolen jewelry for approximately $29,000 to an FBI informant. On January 19, 2013, S. Yelizarov traveled to Brooklyn, New York to sell some, but not all, of the jewelry and stones taken during the robbery of Antony Jewelers. In New York, S. Yelizarov received over $100,000 in cash for the sale of the jewelry and stones. On or about January 21, 2013, S. Yelizarov returned to Maryland and divided the cash proceeds among the members of the conspiracy and others. Sosonko received at least $60,000 from S. Yelizarov for his role in the crimes.

I have reviewed the foregoing statement of facts with my attorney, understand it, agree with it, and do not wish to change any part of it. I further understand that it is included as part of my plea agreement with the government in this case

_____
Aleksey Sosonko

I am Mr. Sosonko's attorney. I have carefully reviewed the statement of facts with him.

_____
David R. Solomon, Esquire
Counsel for Aleksey Sosonko

3