IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

UNITED STATES OF AMERICA,

v.

ALEKSEY LOSHA SOSONKO,

    *Defendant*.

Criminal Action No. ELH-15-0261

**MEMORANDUM OPINION**

In this multi-defendant case, defendant Aleksey Losha Sosonko entered a plea of guilty in December 2015 to the offenses of Conspiracy to Affect Commerce by Robbery, in violation of 18 U.S.C. § 1951(a); Kidnapping, in violation of 18 U.S.C. § 1201; and Brandishing a Firearm in Relation to a Crime of Violence, under 18 U.S.C. § 924(c). ECF 153, ECF 154. In May 2016, Judge J. Frederick Motz, to whom the case was then assigned, sentenced the defendant to a total of 168 months in prison. ECF 232.[1]

The § 924(c) conviction was subsequently vacated. ECF 338; *see* ECF 247, ECF 312, ECF 315. And, on September 14, 2020, I resentenced defendant to a total of 160 months of imprisonment, with credit from May 20, 2015. ECF 416, ECF 420.

Defendant, who was born in November 1980, is now 45 years of age. ECF 351 at 2. He is presently incarcerated at FCI Loretto in Pennsylvania. https://www.bop.gov/inmateloc/ (search by BOP register number 58733-037) (last accessed December 9, 2025). Defendant has a projected release date of September 29, 2026. https://www.bop.gov

---

[1] The case was reassigned to me in October 2017, due to the retirement of Judge Motz. *See* Docket.

Sosonko seeks a reduction in his sentence, pursuant to 18 U.S.C. § 3582(c)(2).  ECF 606, ECF 633 (collectively, the "Motion").  Specifically, he avers that he qualifies for the "zero-point offender reduction" in U.S.S.G. § 4C1.1, which was promulgated in Amendment 821 to the United States Sentencing Guidelines (U.S.S.G." or "Guidelines"), effective November 2023, and made retroactive by the U.S. Sentencing Commission.  In support of this argument, defendant contends that he has no criminal history that disqualifies him for the adjustment.  ECF 633 at 2.

The government opposes defendant's Motion.  ECF 638.  It claims that defendant does not qualify for relief under U.S.S.G. § 4C1.1, because the crimes at issue "were violent, involved firearms, and resulted in serious bodily injury," which therefore "disqualify [defendant] from the reduction."  *Id.* at 1.  *See United States v. Rodriguez*, JKB-16-259, 2024 WL 1994945 (D. Md. May 6, 2024) (denying § 3582(c)(2) motion where defendant failed to satisfy all of the criteria in U.S.S.G. § 4C1.1); *accord United States v. Rivera-Paredes*, No. 24-40082, 2024 WL 3051671 (5th Cir. June 19, 2024) (same).

Even if defendant were eligible, however, the government maintains that the factors set forth in 18 U.S.C. § 3553(a) do not support a sentence reduction.  The government asserts that Sosonko "was convicted of repeated violent criminal activity with significant participation in armed criminal conspiracies and his conduct resulted in devastating consequences for his victims and their families."  ECF 638 at 2.

Sosonko has replied.  ECF 643.  He insists that he should be regarded as a zero point offender because his prior offense occurred in 2007, is more than 17 years old, and he served less than a year in jail for it.  *Id.* at 1-4.  In addition, the defendant asserts, *id.* at 5:  "The government ignores the fact that the Petitioner has been a low/minimum risk of recidivism, as judged by the BOP . . . ."

No hearing is necessary to resolve the Motion.  Local Rule 105.6.  For the reasons that follow, I shall deny the Motion.

## I.  Factual and Procedural Background[2]

### A. Background

On May 12, 2015, Sosonko and five others were indicted by a federal grand jury in the District of Maryland.  ECF 1.  Defendant was charged with conspiracy to affect and affecting commerce by robbery, in violation of 18 U.S.C. § 1951(a) (Counts One and Two); kidnapping conspiracy and kidnapping, in violation of 18 U.S.C. § 1201 (Counts Three and Four); carjacking; in violation of 18 U.S.C. § 2119(1) (Count Five); and using, carrying and brandishing of a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c) (Count Six). A Superseding Indictment (ECF 77) followed on July 28, 2015.  It added another defendant.  He was charged in all but Count Six.

Pursuant to a Plea Agreement (ECF 154, ECF 155), Sosonko pled guilty on December 17, 2015, to three offenses:  conspiracy to affect commerce by robbery (Count One); kidnapping (Count Four); and brandishing a firearm in relation to a crime of violence (Count Six). *See* Docket. The offenses of conspiracy to commit Hobbs Act robbery and kidnapping were the predicate offenses for the § 924(c) charge.  ECF 154, ¶ 4(b).

Sentencing was held on May 16, 2016.  ECF 217. Prior to sentencing, the Court received victim impact statements from Antony Voskovsky; his son, A.V.; and Charles Reichenberg. Mr. Voskovsky and Mr. Reichenberg also addressed the Court at sentencing. In addition, mitigation was presented on behalf of defendant.  The government requested a sentence of sixteen years'

---

[2] I incorporate here the "Background" set forth in my Memorandum Opinion of August 1, 2024.  *See* ECF 639.

incarceration. The defendant requested a sentence of thirteen years.  He argued, *inter alia*, that, unlike the other defendants in the case, he would be facing deportation upon his release from the Bureau of Prisons ("BOP").  ECF 185 at 10, 11.

Judge Motz sentenced the defendant to 168 months of imprisonment, *i.e.*, fourteen years, with credit for pretrial detention.  ECF 232 (Judgment).

On May 3, 2017, defendant, through the Office of the Federal Public Defender ("FPD"), filed a motion to vacate Count Six pursuant to 28 U.S.C. § 2255, and relying on *Johnson v. United States*, 576 U.S. 591 (2015).  ECF 247; *see also* ECF 312.  Then, on June 24, 2019, the Supreme Court decided *United States v. Davis*, 588 U.S. 445 (2019), concluding that the definition of "crime of violence" in 18 U.S.C. § 924(c) was unconstitutionally vague.  In the same year, the Fourth Circuit ruled in *United States v. Walker,* 934 F.3d 375, 379 (4th Cir. 2019), that kidnapping in 18 U.S.C. § 1201(c) "does not categorically qualify as a crime of violence under the force clause," because the crime can be committed by inveiglement.

Defendant filed a supplemental post-conviction motion on August 6, 2019, challenging his conviction on Count Six.  ECF 315. The government responded.  ECF 322.  It conceded that, under *Davis*, 588 U.S. 445; *United States v. Simms,* 914 F.3d 229 (4th Cir. 2019) (en banc); and *Walker*, 934 F.3d 375, the offenses of Hobbs Act conspiracy and kidnapping categorically fail to qualify as predicate crimes of violence with respect to an offense charged under 18 U.S.C. § 924(c).  Therefore, defendant was entitled to a vacatur of Count Six, *i.e.*, his § 924(c) conviction.  By Order docketed on of November 1, 2019, I vacated Sosonko's conviction with respect to Count Six.  ECF 338.

Sosonko faced resentencing with respect to Counts One and Four. It was set for January 27, 2020, but was postponed at the request of counsel.  ECF 367.  It was reset for March 27, 2020,

and then April 23, 2020.  ECF 389, ECF 391.  But, due to the COVID-19 pandemic, we could not proceed on those dates.  Resentencing as to Counts One and Four took place on September 14, 2020.  ECF 420.

The government requested a sentence of fourteen years' incarceration, *i.e.*, the same sentence imposed by Judge Motz.  *See* ECF 638 at 1 n.1.  The defendant requested a sentence of 111 months.  *See* ECF 364 at 17.

I sentenced the defendant to a total of 160 months' imprisonment. ECF 416.  In doing so, I took into consideration that the defendant will face deportation upon completion of his sentence.  *See* ECF 571 at 13.

Sosonko moved for compassionate release on December 12, 2022, pursuant to 18 U.S.C. § 3582(c)(1)(A)(i).  ECF 557.  He submitted numerous exhibits to support his motion.  IN addition, he filed a supplement.  *See* ECF 576.  The FPD declined to represent the defendant.  ECF 563.  By Memorandum Opinion and Order of August 1, 2024, I denied that motion.  The Fourth Circuit affirmed in a per curiam decision.  ECF 647, ECF 648.

In the interim, on October 20, 2023, Sosonko moved for a sentence reduction under 18 U.S.C. § 3582(c)(2).  ECF 606.  He filed a supplement on March 8, 2024. ECF 633.  The FPD again declined to supplement.  ECF 636.  As noted, the government opposes the Motion.  ECF 638.

## B.  Factual Summary

Defendant was one of seven defendants in the case.  The facts, which date to 2012 and 2013, are egregious.

In the Plea Agreement (ECF 154), the parties stipulated to facts establishing that defendant "participated in the planning and commission of [an] armed robbery of Antony Jewelers," located

in Owings Mills.  *Id.* at 11.  In addition, the stipulated facts established that "Sosonko participated in an armed home invasion robbery designed to obtain firearms" that "were subsequently used in the robbery of the jewelry store."  *Id.*

In the first incident, the defendant participated in a home invasion on July 22, 2012.  The victim, R.D., was tied up with a belt and cord, guns were pointed at him, and a codefendant struck R.D. in the head with a gun.  The home was ransacked.  Over $10,000 in property was taken, including ten firearms, jewelry, and electronics.  Some of the property was irreplaceable.

The second incident pertained to the crimes to which defendant pleaded guilty.  It involved the abduction of 19 year-old A.V., the son of immigrants who owned a jewelry store.  A.V. was pulled over at gunpoint by people posing as police officers. The victim, known to one of the participants, had been targeted.  He was forced to reveal the alarm code to the jewelry store owned by his parents and the store keys were taken from him.  A.V. was bound and thrown into the trunk of his car with a bag over his head and was then taken to a remote location, where a sawed-off shotgun was pointed at his head.

In the meantime, two codefendants drove in the victim's car to the jewelry store.  About $500,000 in jewelry was stolen.  Eventually, in what surely seemed like an eternity, the victim, who had been left in the vehicle, managed to kick his way out of the trunk through the back seat.

The Plea Agreement (ECF 154) contains the following stipulation as to the Statement of Facts, *id.* at 11-13:

> Aleksey Sosonko ("Sosonko"), age 35, is a resident of Owings Mills, Maryland. As detailed below, Sosonko participated in the planning and commission of the armed robbery of Antony Jewelers. In the course of that conspiracy, Sosonko participated in an armed home invasion robbery designed to obtain firearms, which were subsequently used in the robbery of the jewelry store.
>
> Home Invasion Robbery:

Z.R.'s home is located on Nicodemus Road in a rural area of Reisterstown, Maryland. During the summer of 2012, Grigory Zilberman ("Zilberman") visited Z.R.'s home as an invited guest on a number of occasions and was familiar with the layout of the home. He was also aware that the residents of the home owned numerous firearms for sporting purposes. Zilberman had handled and fired some of the weapons.

In the days leading up to July 22, 2012, Sosonko, Stanislav (Steven) Yelizarov ("S. Yelizarov"), Marat Yelizarov ("M. Yelizarov"), Zilberman, and others conducted surveillance at the residence in preparation for the robbery.

On July 22, 2012, at approximately 2:30 a.m., Sosonko, S. Yelizarov, M. Yelizarov, Zilberman, and an unnamed co-conspirator travelled in a single vehicle to Z.R.'s residence on Nicodemus Road for the purpose of committing an armed robbery and stealing firearms. The unnamed co-conspirator was the driver. S. Yelizarov, M. Yelizarov, Sosonko and Zilberman, dressed in all black, wearing ski masks and latex gloves, entered the home through the unlocked garage door. S. Yelizarov was armed with a handgun when they entered the residence. Shortly after entering the residence, M. Yelizarov, Sosonko, and Zilberman grabbed long guns and carried them throughout the home.

R.D. was home asleep at the time of the robbery. As the four men entered his bedroom, they pointed guns at him and shined flashlights in his eyes while ordering him not to resist. When R.D. resisted, one of the conspirators struck R.D. repeatedly with the handgun while another jumped on top of R.D. and began to tie him with a belt and a cord. R.D. was told that they would "put one in him" if he continued to resist. R.D. was forced to lay face down while bound. The four men ransacked the home looking for firearms and other valuables. The four men stayed in the home for approximately one hour. R.D. was able to free himself from his bindings and call 911 approximately 15 minutes after the four men left his home. When emergency personnel arrived they observed R.D. bleeding from the mouth and the back of the head. R.D. was taken by ambulance to Sinai Hospital. Items stolen from the house included 10 long guns (rifles and shotguns), a crossbow, a laptop computer, jewelry and a marijuana smoking device. Numerous electronic devices including computers and televisions were destroyed during the robbery. The value of the items stolen was approximately $10,000.

Antony Jewelers – Kidnapping, Carjacking, Robbery:

Antony Jewelers, located at 11238 Reisterstown Road, Owings Mills, Maryland, was a retail business that sold, repaired and designed high-end jewelry and watches that were obtained from suppliers, retailers and manufacturers located outside the State of Maryland and thus affected interstate commerce.

In the fall of 2012, S. Yelizarov and Zilberman devised a plan to commit an armed robbery of Antony Jewelers, a business known by the conspirators to be

owned and operated by members of the Russian community of Northwest Baltimore. One of the objects of the plan was to sell the stolen property for cash and split the proceeds. S. Yelizarov recruited others to participate, including Sosonko, Igor Yasinov ("Yasinov"), Peter Magnis ("Magnis"), M. Yelizarov, Sorhib Omonov ("Omonov") and others. Together, they conspired to commit the robbery, kidnapping, and carjacking described below. The plan was discussed at length on numerous occasions, often at S. Yelizarov's residence.

As part of the conspiracy, the co-conspirators gathered intelligence including S. Yelizarov instructing mutual friends of an employee of Antony Jewelers to learn details about Antony Jewelers for use during the conspiracy. Zilberman exploited the friendship between himself and the employee of Antony Jewelers for the purpose of learning information about Antony Jewelers, including the habits and routine of the employee prior to the armed robbery, kidnapping and carjacking. The intelligence gathering also included conducting surveillance and the use of a global positioning ("GPS") device that was attached to the car of the employee prior to the robbery in order to learn the employee's travel routine and habits. As part of the planning, S. Yelizarov obtained a law enforcement-type light bar and a loudspeaker to impersonate a police officer to stop the employee's vehicle.

On January 15, 2013, Zilberman enticed the employee of Antony Jewelers to visit his home in order to alert the other co-conspirators of the employee's whereabouts. Zilberman notified conspirators when the employee arrived and left his residence. While the employee was at Zilberman's residence, S. Yelizarov, Yasinov, Sosonko, M. Yelizarov, Magnis, Omonov, and an unnamed coconspirator met at S. Yelizarov's residence to prepare for the crime. The preparation included handling the firearms, and donning masks and gloves. M. Yelizarov and S. Omonov drove in a single rented vehicle to Zilberman's residence in order to alert the other co-conspirators of the employee's departure and to follow the employee.

In the early morning hours of January 16, 2013, M. Yelizarov notified the other co-conspirators that the employee had left Zilberman's residence. S. Yelizarov then drove Sosonko, Yasinov, and Magnis, in a second rented vehicle to intercept the employee on his drive home. They took the following items with them: guns, masks, gloves, the law enforcement-type light bar, the loudspeaker, phones, zip ties, and a bag to cover the victim's head. Near the employee's home, the law enforcement light bar was activated in order to stop the employee's car near his home in Owings Mills, Maryland. The conspirators used the loudspeaker to command that the employee exit his car.

S. Yelizarov, Sosonko, Yasinov, and Magnis were each armed with firearms and brandished the firearms to remove the employee from his car. The bag was placed over the victim's head, and he was forcibly bound, and placed into the trunk of his own car. The employee was then driven to a predetermined remote location. At the predetermined location, S. Yelizarov, Sosonko, Yasinov, and Magnis

continued to brandish firearms at the employee, who was told that the co-conspirators knew his family's place of residence, and that if he did not comply with their demands or if he reported the incident to the police they would kill his family. The armed men disguised their voices while making demands of the employee. The employee complied.

At approximately 3:52 a.m., S. Yelizarov and Sosonko drove in the employee's car from the remote location to Antony Jewelers, while Yasinov and Magnis stayed with the employee and held him bound and blindfolded at gunpoint. During the incident, Yasinov and Magnis pointed a sawed-off shotgun to the head of the employee. M. Yelizarov and S. Omonov were stationed near Antony Jewelers and acted as "look-outs," in order to report possible law enforcement presence.

At approximately 4:19 a.m., S. Yelizarov and Sosonko entered Antony Jewelers and stole jewelry, stones, and watches valued at over $500,000. When S. Yelizarov and Sosonko were unable to get into the locked safe, S. Yelizarov used a mobile phone and called back to where the employee was being held and threatened additional harm if the employee did not provide the combination to the safe. When the employee was unable to provide the combination, S. Yelizarov and Sosonko drove back to the remote location, where the employee was placed back into the trunk of his car and driven to another location, where he was left. The employee was able to kick his way out of the trunk through the back seat of his car.

Throughout the incident, the conspirators, including Sosonko, communicated with each other in furtherance of the offenses using mobile phones. The mobile phones and the GPS device are instrumentalities of interstate or foreign commerce.

On January 18, 2013, S. Yelizarov sold a portion of the stolen jewelry for approximately $29,000 to an FBI informant. On January 19, 2013, S. Yelizarov traveled to Brooklyn, New York to sell some, but not all, of the jewelry and stones taken during the robbery of Antony Jewelers. In New York, S. Yelizarov received over $100,000 in cash for the sale of the jewelry and stones. On or about January 21, 2013, S. Yelizarov returned to Maryland and divided the cash proceeds among the members of the conspiracy and others. Sosonko received at least $60,000 from S. Yelizarov for his role in the crimes.

The Plea Agreement addressed the application of the United States Sentencing Guidelines ("Guidelines" or "U.S.S.G."). The parties agreed that defendant had an offense level of 33 for Counts One and Four. ECF 154, ¶¶ 9, 10, 11. Further, the parties agreed that, "[u]nder U.S.S.G. § 2K2.4(b) and 18 U.S.C. § 924(c)(ii), the guideline sentence" with respect to Count Six, the brandishing offense, is seven years, consecutive to any sentences imposed for Count One and

Count Four. *Id.* ¶ 9(q). That corresponded to the mandatory minimum sentence required for Count Six. *Id.* ¶ 5(c). The government agreed to "recommend a reasonable sentence taking into consideration the adjusted U.S.S.G. level and the sentencing factors outlined at 18 U.S.C. § 3553(a)." *Id.* ¶ 14; *see also* ECF 155.

A Presentence Report was prepared. ECF 166 ("PSR"). It indicated that Sosonko was born in Mogilev, Belarus, in 1980. *Id.* at 2; *id.* ¶ 63. He immigrated to Baltimore with his family to escape religious persecution. At the time, defendant was fourteen years of age. *Id.* ¶ 65.

Sosonko is a lawful permanent resident of the United States. *Id.* But, he is not a citizen of this country. The PSR noted that Sosonko, who has been in custody since May 20, 2015, *id.* at 1, "is pending deportation to his native Belarus once he satisfies his custodial sanction." *Id.* at 17; *see id.* ¶ 65.

With regard to the calculation of Sosonko's offense level, Counts One and Four were grouped as "Group 1." *Id.* ¶ 27. The PSR explained, *id.* ¶ 25:

> Pursuant to USSG § 3D1.2(b), Count 1 and Count 4 are grouped together into a single group. Pursuant to USSG § 3D1.3, in the case of counts grouped under USSG § 3D1.2(a)-(c), the offense level applicable to a group is the offense level determined according to Chapter Two and Parts A, B, and C of Chapter Three for the most serious of the counts comprising the group, i.e., the highest offense level of the counts in the group. The guideline for Count 4 produces the highest offense level.

The "Home Invasion Robbery of July 22, 2012" was designated "Relevant Conduct." *Id.* ¶¶ 34–43. It was the sole offense assigned to Group 2. *See id.*

Count Six did not group. The PSR noted, *id.* ¶ 26: "Pursuant to USSG § 3D1.1(b), Count 6 is excluded from grouping because the statute specifies a term of imprisonment to be imposed and requires that such term of imprisonment run consecutively to any other term of imprisonment."

According to the PSR, the adjusted offense level for Group 1 was 34, *id.* ¶ 33, and the adjusted offense level with respect to Group 2 was 32. *Id.* ¶ 43. Pursuant to U.S.S.G. § 3D1.4, the PSR assessed a two-level upward adjustment to the greater of the adjusted offense levels, *i.e*, the offense level with respect to Group 1. *Id.* ¶¶ 44–47. This resulted in a combined adjusted offense level of 36. *Id.* ¶ 47. After a three-point deduction for acceptance of responsibility under U.S.S.G. § 3E1.1, defendant had a final offense level of 33 as to Counts One and Four. *Id.* ¶ 51.

The PSR indicated that defendant had a limited criminal history. *See id.* ¶¶ 54–55. In particular, according to the PSR, on September 1, 2006, defendant pleaded guilty to the operation of a taxi without a license. *Id.* ¶ 54. The PSR did not impose any criminal history points with respect to this conviction. *See id.* The PSR also indicated that on July 24, 2006, defendant received probation before judgment in the District Court for Baltimore City, in relation to a charge of possession of a controlled dangerous substance. *Id.* ¶ 55. Defendant received one criminal history point for that offense. *See id.* Defendant had a criminal history score of one point, *id.* ¶ 59, which resulted in a criminal history category of I. *Id.* ¶ 60.

For Counts One and Four, based upon a total offense level of 33 and a criminal history category of I, defendant's advisory sentencing Guidelines called for a period of imprisonment ranging from 135 to 168 months of incarceration. *Id.* ¶ 89. Accounting for the required minimum consecutive sentence of seven years, or 84 months, with respect to Count Six, defendant's Guidelines were, in effect, 219 to 252 months of incarceration.

At sentencing on May 13, 2016 (ECF 217), Judge Motz imposed concurrent terms of 84 months of incarceration as to Count One and Count Four. ECF 232 at 2. With respect to Count Six, Judge Motz sentenced defendant to a term of 84 months of incarceration, consecutive to the sentences imposed with respect to Counts One and Four. *Id.* Therefore, defendant was sentenced

to a total term of incarceration of 168 months, "with credit for time served . . . since May 25, 2015." *Id.*[3]

On May 3, 2017, through counsel, defendant filed a "Motion to Vacate Conviction Under 28 U.S.C. § 2255." ECF 247 ("Motion to Vacate"). In the Motion to Vacate, defendant asserted that his conviction for use of a firearm during a crime of violence in violation of 18 U.S.C. § 924(c)(1)(A) (Count Six) "must be vacated in light of the Supreme Court's . . . decision in" *Johnson v. United States*, 576 U.S. 591 (2015). *Id.* at 1. On June 6, 2017, the government moved to stay proceedings with respect to defendant's Motion to Vacate, pending the Fourth Circuit's anticipated ruling on "whether kidnapping qualifies as a crime of violence." ECF 252 ("Motion to Stay") at 2. The Court granted the Motion to Stay. ECF 255. The parties later agreed to the extend the stay until the Supreme Court issued a decision in *United States v. Davis*, 588 U.S. 445 (2019). ECF 312 at 2. The Court decided *Davis* on June 24, 2019.

On August 6, 2019, defendant, through counsel, filed an "Emergency Supplemental Motion to Vacate Conviction under 28 U.S.C. § 2255." ECF 315-1 ("Supplemental Motion to Vacate"). The government responded to the Supplemental Motion to Vacate on September 6, 2019. ECF 322. In the response, the government "concede[d]" that, in light of *Davis*, 588 U.S. 445, "both Hobbs Act conspiracy [Count One] and kidnapping [Count Four] no longer qualify as valid predicate 'crime[s] of violence' under 18 U.S.C. § 924(c)." ECF 322 at 1 (first alteration added). Therefore, the government agreed that defendant "is entitled to vacatur of his conviction for using . . . a firearm during . . . a crime of violence (Count Six) . . . ." *Id.* at 3.

---

[3] The PSR, docketed in January 2016 (ECF 166), and the Amended PSR, docketed in January 2020 (ECF 366), both state that defendant had been in custody since May 20, 2015. *See* ECF 166 at 1; ECF 366 at 1.

On October 31, 2019, the Court granted the Motion to Vacate and ordered the vacatur of defendant's judgment of conviction with respect to Count Six. ECF 338, ¶ 4. Resentencing as to Counts One and Four was scheduled for January 27, 2020. *Id.* However, it was later rescheduled to September 14, 2020. ECF 413.

An Amended Presentence Report was prepared. ECF 366 ("Amended PSR"). Pursuant to U.S.S.G. § 3D1.2(b) and (c), the Amended PSR grouped defendant's convictions with respect to Count One and Count Four. *Id.* ¶ 26. And, the PSR noted:

> The plea agreement contains a stipulation wherein the defendant admits committing additional robberies. Therefore, pursuant to [U.S.S.G. §] 1B1.2(c), a conviction by a plea of guilty containing a stipulation that specifically establishes the commission of additional offenses, shall be treated as if the defendant had been convicted of the additional counts charging those offenses.

Pursuant to U.S.S.G. § 1B1.2(c), the Amended PSR treated the "Robbery on July 22, 2012" as an additional conviction. *See* ECF 366, ¶¶ 38–46. This robbery was the sole offense assigned to Group 2. *See id.*

The Amended PSR determined that the adjusted offense level with respect to Group 1 was 37. *Id.* ¶ 37. And, the Amended PSR determined that the adjusted offense level with respect to Group 2 was 31. *Id.* ¶ 46. Pursuant to U.S.S.G. § 3D1.4, the Amended PSR assessed a one-level adjustment to the greater of the adjusted offense levels, i.e, the offense level with respect to Group 1. *Id.* ¶¶ 47, 49–50. Therefore, defendant's combined adjusted offense level was 38. *Id.* ¶ 50. After a three-point deduction for acceptance of responsibility, defendant's total offense level was 35. *Id.* ¶¶ 52–54.

As noted, defendant had a criminal history category of I. *Id.* ¶ 60. Based upon a total offense level of 35 and a criminal history category of I, defendant's Guidelines called for a period of imprisonment ranging from 168 months to 210 months. *Id.* ¶ 91.

Resentencing was held on September 14, 2020.  ECF 420.  At the resentencing, I stated, with respect to defendant's offenses, ECF 571 at 3:  "There are a number of characterizations that . . . come to mind: Egregious, horrifying, heinous, despicable, shocking, base, depraved." Nonetheless, I also recognized that defendant's expected deportation to Belarus, "an unknown land, where he knows no one," would be "an incalculable hardship."  *Id.* at 10.

Moreover, defendant's early life was not easy. As noted, he was born in Belarus in 1980. ECF 364 at 8.  At the time, Belarus was part of the Soviet Union.  *Id.*  Defendant never knew his birth mother, who had substance abuse issues and left the home.  *Id.*  He was raised primarily by his grandmother.  ECF 366, ¶ 66.

In 1994, when defendant was fourteen years of age, he and his family immigrated to the United Staes to escape religious persecution.  ECF 364 at 8.  By age 15, the defendant left the home.  Apparently, his father and stepmother were busy with a new family.  *Id.*  And, by 2010, the defendant's father, with whom the defendant was very close, passed away.  *Id.* at 9.  Defendant began drinking by age 16 and turned to crack cocaine by age 24.  *Id.*  Until this case, defendant had no significant prior record.  *See* ECF 366, ¶¶ 55-60.

At the first sentencing, the government sought a 16-year sentence.  As noted, Judge Motz imposed a total sentence of fourteen years (168 months).  The government sought that same sentence at the resentencing.  Nevertheless, I reduced defendant's sentence to 160 months of imprisonment, with credit for time served since May 20, 2015.  ECF 416 at 2.[4]  Specifically, I sentenced defendant to concurrent terms of 160 months of incarceration with respect to Count One and Count Four.  *Id.*

---

[4] *See* note 3, *supra*.

**II. Discussion**

As a general matter, once imposed, federal sentences must remain "final" and undisturbed. 18 U.S.C. § 3582(b).  However, Congress created a narrow exception to this general rule when the U.S. Sentencing Commission retroactively amends the applicable Guidelines.  Specifically, federal law provides that a court may reduce a sentence after it has been imposed where the defendant "has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. § 994(o)." 18 U.S.C. § 3582(c)(2). However, the court may only reduce such a sentence "after considering the factors set forth in section 3553(a) to the extent that they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." *Id.*

District courts must employ a two-step approach in considering a § 3582(c)(2) motion. "First, a court must determine the defendant's eligibility.  Section 3582(c)(2) permits a reduction only if (1) the defendant's 'term of imprisonment [was] based on a sentencing range that has subsequently been lowered by the Sentencing Commission,' and (2) the reduction 'is consistent with applicable policy statements issued by the Sentencing Commission.' § 3582(c)(2). Second, the court may grant the authorized reduction 'after considering the factors set forth in section 3553(a) to the extent that they are applicable.'" *United States v. Peters*, 843 F.3d 572, 574 (4th Cir. 2016) (citations omitted). "The ultimate decision of '[w]hether to reduce a sentence and to what extent' is committed to the district court's discretion." *Id*.

Sosonko moves for a sentence reduction under Amendment 821 of the Guidelines. In particular, Sosonko claims eligibility under the new "zero-point offender" reduction found in U.S.S.G. § 4C1.1.  It provides (emphasis added):

If the defendant meets all of the following criteria:

(1)     *the defendant did not receive any criminal history points from Chapter Four, Part A;*

(2)     the defendant did not receive an adjustment under §3A1.4 (Terrorism);

(3)     *the defendant did not use violence or credible threats of violence in connection with the offense*;

(4)     the offense did not result in death or serious bodily injury;

(5)     the instant offense of conviction is not a sex offense;

(6)     the defendant did not personally cause substantial financial hardship;

(7)     *the defendant did not possess, receive, purchase, transport, transfer, sell, or otherwise dispose of a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense*;

(8)     the instant offense of conviction is not covered by §2H1.1 (Offenses Involving Individual Rights);

(9)     the defendant did not receive an adjustment under §3A1.1 (Hate Crime Motivation or Vulnerable Victim) or §3A1.5 (Serious Human Rights Offense); and

(10)    the defendant did not receive an adjustment under §3B1.1 (Aggravating Role) and was not engaged in a continuing criminal enterprise, as defined in 21 U.S.C. § 848 decrease the offense level determined under Chapters Two and Three by 2 levels.

Notably, a defendant must satisfy all ten criteria in order to qualify.

The government argues that Sosonko is not eligible for any relief because he is not among the class of defendants who qualify under the provisions set forth in U.S.S.G. § 4C1.1. I agree.

Sosonko fails to qualify under Sections (a)(1), (a)(3), (a)(4), and (a)(7). Specifically, Sosonko had one criminal history point for a conviction in July 2006 for possession of a controlled dangerous substance. ECF 366, ¶ 58. He received probation before judgment. *Id.* To be sure, this is a minor, dated offense. But, even if it were overlooked here, Sosonko admitted in his Plea

16

Agreement and under oath at his guilty plea that he possessed and brandished firearms in connection with his offenses, that both the offense of conviction and the relevant conduct involved the use of violence and threats of violence by defendant in connection with the offenses, and that the 2012 home invasion resulted in hospitalization of R.D., which qualifies as serious bodily injury.  ECF 232.

As the government maintains, these circumstances disqualify the defendant from relief under Amendment 821.  *See* ECF 638 at 14 (citing cases); *see*, *e.g.*, *United States v. Rodriguez*, JKB-16-259, 2024 WL 1994945, at *1 (D. Md. May 3, 2024) (Bredar, J.) (concluding that defendant was ineligible for a sentence reduction under Amendment 821 because the crime involved death or serious bodily injury and thus did not satisfy § 4C1.1(a)(4)); *accord United States v. Rivera-Paredes*, No. 24-40082, 2024 WL 3051671 (5th Cir. June 19, 2024) (concluding that because defendant "received a § 3B1.1(a) enhancement," he was not eligible for relief under § 4C1.1(a)(10)); *United States v. McFarlane*, 18-cr-00025-019, 2024 WL 3055034, at *3 (W.D. Va. June 20, 2024) (concluding that defendant "possessed his firearm in connection with his drug offenses and is thus ineligible for a sentence reduction under § 3582(c)(2)"); *United States v. Laveaga*, 2024 U.S. Dist. LEXIS 1338, *1 (W.D.N.C. 2024) ("Here, the defendant admitted that he possessed a firearm in his residence where law enforcement also found 3.75 kilograms of fentanyl. . . . He also received an aggravated role enhancement. . . .  Accordingly, he is not eligible for relief " under § 4C1.1).

Simply put, Sosonko does not meet the statutory criteria to qualify as a zero-point offender. Therefore, this Court must deny his Motion.

Even if the Court were to find Sosonko eligible for consideration under Amendment 821, the government urges this Court to decline to exercise its discretion in defendant's favor, in light

of the factors set forth in 18 U.S.C. § 3553(a). These factors include the nature and circumstances of the offense, the history and characteristics of the defendant, and the need for the sentence to reflect the seriousness of the offense, afford adequate deterrence, and protect the public. The government's argument is persuasive.

As to the nature of the offense, Sosonko was convicted of violent criminal activity. ECF 638 at 15. As the government correctly observes, defendant's conduct resulted in "devastating consequences for his victims and their families." *Id.*

The length of A.V.'s ordeal, as recounted above, is noteworthy. The way in which the crime was executed undoubtedly terrorized the 19-year-old victim, who surely thought his life was coming to an end. In addition to the emotional trauma of A.V., the family experienced profound economic loss with regard to a business that Mr. Voskovsky and his wife worked so hard to establish.[5] As noted, Sosonko received about $60,000 for his role in the offenses.

And, the defendant, along with others, committed an armed robbery of R.D. He was brutally assaulted by a co-defendant.

Further, the government points to the need for deterrence, and the need to promote respect for the law, both of which militate in favor of denying the Motion. *Id.* In the government's view, it "would do little for deterrence and promoting respect for the law if Sosonko received a sentence reduction." *Id.* I agree.

For these reasons, I shall deny defendant's Motion. ECF 606, ECF 633. An Order follows.


Date:   December 10, 2025                         /s/
                                          Ellen L. Hollander
                                          United States District Judge

---

[5] Mr. Voskovsky has since died.